IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CORINNA DUNLAP,

      Plaintiff,                No. CIV S-09-3446 EFB

      vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.         ORDER

_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for Social Security Disability Insurance Benefits

("DIB") under Title XVI of the Social Security Act.  For the reasons discussed below, plaintiff's

motion is granted, defendant's motion is denied, and the case is remanded for proceedings under

sentence four of 42 U.S.C. § 405(g).

I. BACKGROUND

      Plaintiff, born September 9, 1968, formally applied for DIB on June 14, 2006.

Administrative Record ("AR") 83.  Plaintiff's application alleged that she had been disabled since

June 17, 2005.  *Id.* at 7.  Her application was denied initially and upon reconsideration, and

plaintiff requested an administrative hearing.  *Id.*  On July 24, 2008, a hearing was held before

administrative law judge ("ALJ") Peter Belli.  *Id.* at 28.  Plaintiff was represented by counsel and

1

1  testified at the hearing, along with vocational expert Jim Vaneck.  *Id.*

2  The ALJ issued a decision on July 24, 2008, finding that plaintiff was not disabled.[1]  *Id.* at

3  7-17.  The ALJ made the following specific findings:

4          1.  The claimant meets the insured status requirements of the Social
        Security Act through December 31, 2010.

5

6          2.  The claimant has not engaged in substantial gainful activity
        since June 17, 2005, the alleged onset date (20 CFR 404.1520(b)
        and 404.1571 *et seq.*).

7          ...

8

9          3.  The claimant has the following severe impairments: Status post
        surgery for Thoracic outlet syndrome in her left side (shoulder, arm
        and hand), Cervical degenerative disc disease, and depression (20

10         CFR 404.1520(c)).

11         ...

12         4.  The claimant does not have an impairment or combination of
        impairments that meets or medically equals one of the listed

13

14     [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income is paid to

15 disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability,
in part, as an "inability to engage in any substantial gainful activity" due to "a medically

16 determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step
sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R.

17 §§ 404.1520, 404.1571-76,  416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42
(1987).  The following summarizes the sequential evaluation:

18         Step one:  Is the claimant engaging in substantial gainful activity?  If so,
the claimant is found not disabled.  If not, proceed to step two.

19         Step two:  Does the claimant have a "severe" impairment?  If so, proceed
to step three.  If not, then a finding of not disabled is appropriate.

20         Step three:  Does the claimant's impairment or combination of
impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P,

21 App.1?  If so, the claimant is automatically determined disabled.  If not, proceed
to step four.

22         Step four:  Is the claimant capable of performing his past work?  If so, the
claimant is not disabled.  If not, proceed to step five.

23         Step five:  Does the claimant have the residual functional capacity to
perform any other work?  If so, the claimant is not disabled.  If not, the claimant

24 is disabled.
*Lester v. Chater,* 81 F.3d 821, 828, n.5 (9th Cir. 1995).

25     The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential

26 evaluation process proceeds to step five.  *Id.*

1    impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
     404.1520(d), 404.1525 and 404.1526).  No treating or examining
2    physician has mentioned findings equivalent in severity to the
     criteria of any listed impairment.
3
     ...
4
     5.  After careful consideration of the entire record, the undersigned
5    finds that the claimant has the residual functional capacity to
     perform the full range of light work as defined in 20 CFR
6    404.1567(b).  She can lift, carry, push, and/or pull 20 pounds
     occasionally with her right upper extremity and 10 pounds with her
7    left upper extremity.  She is able to use her left hand as a helper
     hand.  She can sit, stand and walk 8 hours out of an 8-hour day with
8    normal breaks.  She can do no work above the shoulder with the left
     upper extremity.  She is limited to occasional reaching in the
9    remaining directions with the left upper extremity.  She is able to
     frequently twist her head and neck.  She is not able to climb
10   ladders, ropes, or scaffolds.  She is not able to crawl.  She is not
     limited in her ability to receive, remember, understand and carry out
11   short, simple instructions.  She is not limited in her ability to
     interact appropriately with the public, supervisors, and co-workers.
12
     ...
13
     5.(sic)  The claimant is capable of performing her past relevant
14   work as a Customer Service Representative.  This work does not
     require the performance of work-related activities precluded by the
15   claimant's residual functional capacity (20 CFR 404.1565).
16
     ...
17
     6.  The claimant has not been under a disability, as defined in the
     Social Security Act, from June 17, 2005 through the date of this
18   decision (20 CFR 404.1520(f)).

19   *Id.*

20        Plaintiff requested that the Appeals Council review the ALJ's decision.  However, on

21   October 15, 2009, the Appeals Council denied review, leaving the ALJ's decision as the "final

22   decision of the Commissioner of Social Security."  *Id.* at 1-3.

23   II.  LEGAL STANDARDS

24        The Commissioner's decision that a claimant is not disabled will be upheld if the findings

25   of fact are supported by substantial evidence in the record and the proper legal standards were

26   applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

3

1    *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

2    180 F.3d 1094, 1097 (9th Cir. 1999).

3          The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4    conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

5    more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

6    Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

7    conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

8    *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

9          "The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

11   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

12   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

13   *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

14   III.   ANALYSIS

15         Plaintiff argues that the ALJ rejected Dr. Sommer's opinion without a legitimate reason

16   for doing so, and mischaracterized Dr. Roux's opinion.[2]  The weight given to medical opinions

17   depends in part on whether they are proffered by treating, examining, or non-examining

18   professionals. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is

19   given to the opinion of a treating professional, who has a greater opportunity to know and observe

20   the patient as an individual. *Id.*  To evaluate whether an ALJ properly rejected a medical opinion,

21   in addition to considering its source, the court considers whether (1) contradictory opinions are in

22   the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted

23   opinion of a treating or examining medical professional only for "clear and convincing" reasons.

24

25         [2] Plaintiff also argues that the ALJ failed to credit her testimony and third party
     statements without providing legitimate reasons for doing so, and erred in assessing her RFC and
     questioning the vocational expert (VE). Dckt. No. 22 at 31-32.  As the case must be remanded
26   for further proceedings, the court does not address these arguments.

1  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional

2  may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.

3  *Id.* at 830.

4         In connection with plaintiff's workers' compensation claim, Dr. Sommer examined

5  plaintiff twice and prepared three reports.  *See* AR 599-622.  His reports were nine, six, and eight

6  pages long and detailed her social history, work history, current symptoms, and physical exam

7  findings, summarized her previous medical records, and discussed future treatment and diagnostic

8  options.  In each of the reports, Dr. Sommer opined that plaintiff was temporarily totally disabled

9  for the purposes of workers' compensation.

10         In his June 2006 report, Dr. Sommer diagnosed plaintiff with chronic painful cervical

11  degenerative disc disease with ongoing left upper radiculitis without definite radiculopathy from

12  the neck, and noted that she had residual radiculopathy from her thoracic outlet syndrome

13  surgery, in which a rib had been removed.  *Id.* at 605.  Dr. Sommer wrote "not only is the patient

14  not really better, but now she has more significant neurologic findings, at least as I understand it

15  from the present exam."  *Id.* at 606.  He stated that "[h]er disability from [her last day of work] to

16  now and treatment has been appropriate insofar as the time off of work."  *Id.*  He provided a

17  supplemental report in December 2006, in which he stated, "The recommendations for continuing

18  care and necessarily continued temporary total disability status made in my last report remain in

19  place."  AR 612.  Finally, in March 2008, Sommer noted that "Her biceps reflex on the

20  left is very nearly gone, in other words just barely present, while all other reflexes in both upper

21  limbs are present and brisk/normal. There are positive Phalen's and Tinel's signs on the left (that

22  was not true when I first saw her)."  *Id.* at 617.  He noted that plaintiff now had "findings

23  consistent with a left carpal tunnel syndrome," and opined that plaintiff remained in a "status of

24  temporary total disability."  *Id.* at 619-20.  Dr. Sommer recommended that plaintiff have a

25  neurological consult, a cervical MRI, and a surgical consult.  *Id.* at 618.

26  ////

1    The ALJ's opinion only mentioned one of Dr. Sommer's reports.  The ALJ did not

2  mention Dr. Sommer's opinion that plaintiff was temporarily totally disabled.  He did not state

3  what weight he was giving to Dr. Sommer's opinions.  The ALJ wrote only the following:

4       On March 24, 2008, the claimant underwent an orthopedic examination performed
        by Michael A. Somer, (sic) M.D.  He diagnosed her with chronic painful cervical
5       degenerative disc disease with ongoing left upper extremity radiculitis without
        definite radiculopathy from the neck; status post major operative intervention for
6       thoracic outlet syndrome with residual radiculopathy from the surgery (Exhibit
        21F/1-5).
7

8  *Id.* at 11.

9    Defendant argues that the ALJ was not required to discuss Sommer's opinion that plaintiff

10  was temporarily totally disabled, as workers' compensation medical reports address different

11  standards and concerns from Social Security disability, and are not directly applicable to Social

12  Security disability cases.  *See* Def.'s Br. at 11.  It is true that the terminology used in workers'

13  compensation disability proceedings is not the same as Social Security disability terminology.

14  *Desrosiers v. Sec. of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "[T]here are

15  different statutory tests for disability under worker's compensation statutes and under the Social

16  Security Act."  *Coria v. Heckler*, 750 F.2d 245, 247 (3rd Cir. 1984).  It is not true that the ALJ

17  may disregard without analysis the evidence presented by the treating doctor's descriptions and

18  comments as to plaintiff's medical conditions and limitations.  Even though the rating schemes of

19  the two programs are different, an ALJ may not ignore a doctor's medical opinion merely because

20  it was issued in the context of workers' compensation proceeding.  *See id.* (holding that ALJ erred

21  in failing to consider medical reports submitted in state workers' compensation proceeding).  An

22  ALJ must evaluate medical opinions, even if couched in state workers' compensation

23  terminology, just as he or she would evaluate any other medical opinion.  *See*, *e.g.*, *Booth v.*

24  *Barnhart*, 181 F. Supp.2d 1099, 1105-06 (C.D. Cal. 2002).

25    Here, Dr. Sommer opined in three separate reports that plaintiff was temporarily totally

26  disabled from at least June 2006 until March 2008.  Thus, Dr. Sommer found that plaintiff was

1  incapable work (including performing her former job) for over a twelve-month period.  In

2  contrast, the ALJ found that plaintiff was able to perform her former job as a customer service

3  representative, and, without further analysis or discussion of Dr. Sommer's contrary opinion, that

4  she had not been disabled at any time relevant to the decision.  *See* AR 16-17.  This was error.  If

5  the ALJ intended to discredit Dr. Sommer's opinion, the ALJ was required to set forth a specific

6  finding in that regard and state clearly the reasons for discrediting the opinion.  If the ALJ

7  intended to fully credited Dr. Sommer's opinion, he likely would not have found that plaintiff was

8  capable of performing her former job and would have had to engage in further analysis to

9  determine whether plaintiff could perform any other work.

10          The failure to address Dr. Sommer's report may also have affected the assessment of

11  plaintiff's testimony.  The court does not mean to imply that Dr. Sommer's report shows that

12  plaintiff is disabled by social security standards–that is, unable to perform any work at all.[3]

13  However, Dr. Sommer's report does lend support to plaintiff's testimony at the hearing that her

14  symptoms were worsening after her surgery rather than improving.  *See* AR 603 ("Asked whether

15  things seem to be improving still over the last several weeks or few months, Ms. Dunlap says she

16  does not think so; she still holds out some hope because Dr. Avery has told her it may take up to a

17  couple of years for the nerve irritation caused by the surgery to resolve"); 606 ("not only is the

18  patient not really better, but now she has more significant neurologic findings, at least as I

19  understand it from the present exam and speaking with the patient, than before surgery.  I may be

20  mistaken, however, on that, as I do not have the full record set."); 617 ("her biceps reflex on the

21  left is very nearly gone . . . There are positive Phalen's and Tinel's signs on the left (that was not

22  true when I first saw her)"); 618 ("Dunlap . . . indicates she has more in the way of neck and

23  upper left quadrant symptoms than when she and I first met . . . her prescription list is skewed

24  more heavily toward opiates"); 619 ("I am curious as to how much of this patient's increased

25

26     [3]   That determination must still be made by an ALJ with an appropriate RFC assessment in light of all of the medical evidence, including Dr. Sommer's report.

1  trouble, over and above when she and I first met a year and a half ago, could possibly be from the

2  interval trip and fall event"). The ALJ discredited plaintiff's testimony regarding her symptoms

3  in part because her symptoms suspiciously appeared to worsen after she filed her application for

4  disability benefits. He wrote that in May 2006, plaintiff was "functioning with the attitude that

5  she might be able to return to work . . . However, when she filed this claim in June 2006, she

6  reported that she could not do anything without it irritating and hurting her left shoulder . . . ."

7  AR 14. While Dr. Sommer's statements regarding worsening symptoms seem to be partially

8  based on plaintiff's complaints to him, they also seem to be based on some objective medical

9  findings. Therefore, fully crediting Dr. Sommer's statements would invalidate a major reason

10  that the ALJ discredited plaintiff's testimony regarding her pain and dysfunction. Accepting

11  plaintiff's testimony as true might then lead to a determination that she was disabled. Therefore,

12  the court cannot say that the ALJ's error in failing to discuss and either accept or provide specific

13  and legitimate reasons for rejecting Dr. Sommer's reports was harmless.

14       Moreover, the ALJ also erred in mischaracterizing Dr. Roux's opinion, and in failing to

15  either include her assessed limitations in plaintiff's RFC or provide specific and legitimate

16  reasons for rejecting her opinion. Dr. Roux examined plaintiff in September 2006 and completed

17  a psychiatric evaluation report. *See* AR 524-34. Dr. Roux diagnosed plaintiff with "major

18  depression (with anxiety features), recurrent–currently moderate." *Id.* at 532. She opined that

19  plaintiff "continues to experience a number of depression/ anxiety symptoms, which–especially

20  when combined with her chronic pain (and other stressors)–would likely have some negative

21  impact on her ability to obtain or maintain gainful employment." *Id.* Dr. Roux opined that

22  plaintiff was:

23       1. Able to understand, remember, and carry out <u>simple</u> one or two-step job
     instructions and activities.

24       2. Moderately impaired in her ability to understand, remember, and carry out
     detailed and <u>complex</u> job instructions and activities.

25       3. Able to mildly impaired in her ability to relate and interact with supervisors,
     coworkers, and the public.

26       4. Moderately impaired in her ability to maintain concentration and attention,

1    persistence, and pace.
     5. Moderately impaired in her ability to associate with day-to-day work activity,
2    including attendance and safety.
     6. Mildly impaired in her ability to adapt to the stresses common to a normal work
3    environment.
     7. Mildly to moderately impaired in her ability to maintain regular attendance in
4    the work place and perform work activities on a consistent basis.
     8. Mildly to moderately impaired in her ability to perform work activities without
5    special or additional supervision.

6    *Id.* at 533 (underscore in original).  The ALJ inaccurately summarized Roux's opinions as

7    follows:

8        Joanne Roux, M.D., evaluated the claimant and found her to be mentally impaired
         secondary to subjective complaints of chronic pain.  Dr. Roux completed a mental
9        residual functional capacity assessment of the claimant.  She was not limited in her
         ability to receive, remember, understand, and carry out short, simple instructions.
10       She was moderately limited in her ability to receive, remember, understand, and
         carry out detailed instructions.  She was not limited in her ability to make
11       judgements on both simple and detailed work-related decisions.[4]  She was not
         limited in her ability to interact appropriately with the public, supervisors, and co-
12       workers.[5]  She was slightly limited in her ability to respond appropriately to work
         pressures in the usual work setting.  She was also slightly limited in her ability to
13       respond appropriately to changes in a routine setting.[6]

14   *Id.* at 12.  Thus, the ALJ omitted Dr. Roux's opinions that plaintiff was moderately limited in her

15   ability to maintain concentration, attention, persistence, and pace, and her ability to associate with

16   day-to-day work activity, including attendance and safety; and mildly to moderately impaired in

17   her ability to maintain attendance and perform work activities on a consistent basis and without

18   special or additional supervision.  In addition, as noted in footnotes four and six, the ALJ

19   attributed statements to Dr. Roux that she did not make.

20       The ALJ did not explain what weight he assigned Dr. Roux's opinion.  He did not discuss

21   any other medical opinions in the record regarding plaintiff's alleged mental impairments.  But to

22   determine whether plaintiff could perform her former work, the ALJ posed a hypothetical

23   _____

24       [4] Dr. Roux's opinion does not contain this statement.

25       [5] Dr. Roux found that plaintiff was "able to mildly impaired" in this category.

26       [6] Dr. Roux's opinion does not contain this statement.

1   question to the VE that included the limitations that the ALJ attributed to Dr. Roux above.[7]  As

2   explained above, this hypothetical did not contain the limitations that Dr. Roux actually

3   expressed.  This was clear error.  This court cannot determine how the VE would have responded

4   if he had been given a hypothetical containing Dr. Roux's actual opinion.  Therefore, this court

5   cannot determine that the error was harmless.

6        The ALJ also made the following findings regarding plaintiff's mental impairments,

7   which do not appear to be based on any medical opinions in the record:

8        Based upon the evidence of record the undersigned finds that the claimant is not
     mentally restricted in her activities of daily living.  She is not limited in her ability

9        to maintain social functioning, and mildly limited in her ability to maintain
     concentration, persistence, or pace.

10

11   *Id.* at 13.  These findings are not drawn from Dr. Roux's opinion.  They are contrary to those of

12   consulting physician Dr. Hurwitz, who wrote that plaintiff was mildly limited in her activities of

13   daily living and maintaining social functioning, and had moderate difficulties in maintaining

14   concentration, persistence and pace.  *See* AR 558.  The ALJ did not even mention Dr. Hurwitz's

15   opinions.  It is unclear what evidence, if any, on which the ALJ based his conclusion.

16        Although he provided a more restrictive RFC to the VE, the ALJ ultimately included only

17   the following mental limitations in his bolded RFC findings in his written opinion:  "She is not

18   limited in her ability to receive, remember, understand, and carry out short, simple instructions.

19   She is not limited in her ability to interact appropriately with the public, supervisors, and

20   coworkers."  *Id.* at 13.  Thus, by stating only that plaintiff was "not limited" in certain areas, the

21

22        [7] *See* AR 55 ("there are no limitations on this hypothetical individual to receive,
understand, remember and carry out short, simple instructions.  The ability to receive,
23   understand, remember and carry out detailed instructions is moderately limited.  By moderate
there is greater than mild but less than marked limitation in this area.  But the individual is able
24   to perform satisfactorily.  There are no limitations on the ability to interact appropriately with the
public, with supervisors and co-workers.  The ability to respond appropriately to work pressures
25   in the usual work setting is slightly limited.  And the ability to respond appropriately to changes
in a routine work setting is slightly limited.  Can this hypothetical individual in your opinion
26   perform any of the past work performed by the claimant?")

1  ALJ found that plaintiff had no mental impairments at all.  Curiously, this is inconsistent with the

2  limitations he provided to the VE.

3  VI.  CONCLUSION

4        This court's function is merely to determine whether the ALJ's decision was based on

5  substantial evidence and the proper legal standards.  The ALJ clearly erred in failing to either

6  accept or provide specific legitimate reasons for rejecting these doctors' opinions, and therefore

7  the case must be remanded for further proceedings.  By remanding the case for further

8  proceedings, the court does not imply that plaintiff is entitled to disability benefits.  However, the

9  court's role is limited to reviewing the Commissioner's decision; it may not re-weigh the medical

10  evidence or make findings the ALJ failed to make, or to state reasons for accepting or rejecting

11  medical opinions that the ALJ failed to address.  As detailed above, this court cannot conclude

12  that the ALJ's errors were harmless.

13        Accordingly, IT IS HEREBY ORDERED that:

14        1.  Plaintiff's motion for summary judgment or remand is granted;

15        2.  The Commissioner's cross-motion for summary judgment is denied;

16        3.  The case is remanded for further proceedings pursuant to sentence four of 42 U.S.C.

17  § 405(g); and

18        4.  The Clerk is directed to enter judgment for plaintiff.

19  DATED:  March 25, 2011.

20

21        EDMUND F. BRENNAN
          UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

11